UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA

CHARMIN MINER, et al.,        :
                              :
          Plaintiffs,         :  Docket No.: CA 13-633
                              :
     vs.                      :      Washington, DC
                              :    10:20 a.m., Friday
VINCENT C. GRAY, et al.,      :    November 1, 2013
                              :
          Defendants.         :
                              :
_____X


     REPORTER'S OFFICIAL TRANSCRIPT OF MOTIONS HEARING
        BEFORE THE HONORABLE BERYL A. HOWELL
             UNITED STATES DISTRICT JUDGE

APPEARANCES:

  For the Plaintiffs:    JOSEPH D. GEBHARDT, ESQ.
                         DANIEL GEBHARDT, ESQ.
                         VALENCIA RAINEY, ESQ.
                         Gebhardt & Associates, LLP
                         1101 17th Street, NW
                         Suite 807
                         Washington, DC 20036
                         (202) 496-0400


  For the Defendants:    SHERMINEH C. JONES, ESQ.
                         Office of the Attorney General
                         441 4th Street, NW
                         Suite 630 South
                         Washington, DC 20001
                         (202) 724-6648


  The Court Reporter:    CHANTAL M. GENEUS, RPR, CRR
                         Certified Realtime Reporter
                         Registered Professional Reporter
                         United States District Court
                         333 Constitution Avenue, NW
                         Washington, DC 20001


Proceedings reported by machine shorthand. Transcript
produced by computer-aided transcription.

P R O C E E D I N G S

1

2          (Whereupon, at 10:20 a.m. the proceedings

3          commenced and the following ensued:)

4          THE COURTROOM DEPUTY:  Matter before the

5     Court, Civil Action Number 13-633, *Charmin Miner,*

6     *et al., versus Vincent C. Gray, et al.*

7          Counsel, please come forward and identify

8     yourselves for the record.

9          MR. GEBHARDT:  Good morning, Your Honor.

10    Joseph Gebhardt for the plaintiffs.  With me are

11    Daniel Gebhardt, who is an associate helping me with

12    the case, also my son, who is a lawyer.  And Valencia

13    Rainey is assisting with the case.  I don't think her

14    appearance is in.  She's a lawyer in my law firm.  And

15    Mr. Miner, one of the plaintiffs, is here.

16         THE COURT:  Okay.  Good morning,

17    Mr. Gebhardt, Mr. Gebhardt, Mr. Miner.  And what was

18    the name of the other person?  Did you mention the

19    name of one other with you?

20         MR. GEBHARDT:  Valencia Rainey is sitting in

21    the audience, and she's helping us in the case.

22         THE COURT:  She's welcome to come up to

23    counsel table.

24         MR. GEBHARDT:  Okay.

25         THE COURT:  I think I would like the

1   spelling of her name if you don't mind.

2        MR. GEBHARDT:  Valencia is like the city in

3   Spain, V-A-L-E-N-C-I-A.  And the last name is Rainey,

4   R-A-I-N-E-Y.

5        THE COURT:  Thank you.  All right.

6        For the District.

7        MS. JONES:  Shermineh Jones for the

8   plaintiff and the chief of police, Cathy Lanier.

9        THE COURT:  Thank you.  Good morning,

10  Miss Jones.

11       So I have before me today motions from each

12  side.  I have from the plaintiffs a motion to amend,

13  and I also have in front of me the defendants' motion

14  to dismiss.  And I have a few questions for each --

15  for each side.  And I'll hear argument, if you like,

16  on both of those motions.

17       Why don't I begin with Mr. Gebhardt.

18       MR. GEBHARDT:  Thank you, Your Honor.

19       THE COURT:  Yes.  I see that your first

20  amended complaint that was filed on the docket at ECF

21  Number 9-1 does not name as a defendant Mayor Gray.

22  That was one of the issues raised in the District's

23  motion to dismiss, which is to dismiss --

24       MR. GEBHARDT:  We decided to concede to

25  their arguments, Your Honor.

1          THE COURT:  Just let me finish.  Don't talk

2   over me because the court reporter can only take down

3   one person talking, and she always opts to write down

4   what I'm saying other than you.  That's the benefit of

5   sitting up here.

6          MR. GEBHARDT:  I'm sorry.

7          THE COURT:  So if you talk over me, we will

8   lose your words forever.  All right.

9          MR. GEBHARDT:  Okay.

10          THE COURT:  So I take it that since you

11   haven't named Mayor Gray in your proposed first

12   amended complaint that you are dropping him?

13          MR. GEBHARDT:  Yes.

14          THE COURT:  Thank you.

15          But you have substituted for the mayor Chief

16   Lanier.  And are you suing Chief Lanier in her

17   official capacity, professional capacity, or both?

18          MR. GEBHARDT:  It's both, but it's primarily

19   official.  We need to do discovery to find out what

20   Chief Lanier knows.

21          THE COURT:  All right.  But from my review

22   of this complaint, what are the factual allegations,

23   if any, that you have alerted that indicate any

24   personal involvement by Chief Lanier whatsoever that

25   would support a suit against her in her personal

1    capacity?

2         MR. GEBHARDT:  The amended complaint that's

3    pending -- I can point to the specific paragraphs, but

4    I could at least state verbally that Mr. Miner, the

5    plaintiff who is in the courtroom, wrote about this

6    incident on February 6th to the number two police

7    official, the assistant chief of police, Diane

8    Groomes, and he also spoke to her at that time, spoke

9    to her on February 7th.  The incident took place on

10   February 6th.

11        February 7th he spoke to the assistant

12   chief, number two official, Diane Groomes.  And then

13   on February 8th he wrote a letter of complaint to --

14   through e-mail to Assistant Chief Groomes, who said

15   she would forward this to internal affairs for a

16   review or investigation.

17        And so we presume that the number two

18   official would have cleared this action or discussed

19   this action with the chief.  But we don't -- as I say,

20   we don't have anything beyond that.  The number two

21   official dealt with Mr. Miner on this.

22        THE COURT:  All right.  So it's really a

23   presumption, a leap that you're making about Chief

24   Lanier's involvement in this case?

25        MR. GEBHARDT:  Yes.  I wouldn't call it a

1    leap.  I think it's -- I think it's an inference

2    that -- I don't think the number two official would

3    commit to taking action without clearing it with the

4    number one official.  And in the community they are

5    known as close colleagues at work, and so I just --

6    this isn't like some captain down the line or someone

7    running one of the District stations.  This is the

8    number two official.

9           So as I said, we don't have discovery.  The

10   first thing in discovery we will do is try and depose

11   Miss -- you know, Officer Groomes and see what she has

12   to say about it.

13          THE COURT:  All right.  In addition the

14   District, in its motion to dismiss, has indicated that

15   you cannot seek punitive damages against the

16   District -- and I think they're correct on this -- or

17   against Chief Lanier in her official capacity.

18          Have you dropped your punitive damages

19   claim?

20          MR. GEBHARDT:  Yes, Your Honor.

21          THE COURT:  All right.  So that's no longer

22   an issue that I need to resolve from the District's

23   motion to dismiss?

24          MR. GEBHARDT:  That's correct, Your Honor.

25          THE COURT:  All right.  Is there anything

1    else that you would like to say in support of your

2    motion to amend the complaint, which I understand from

3    the District's perspective would be futile?

4              MR. GEBHARDT:  Your Honor, their argument on

5    the grounds of futility is that we haven't proven our

6    case.  And we don't pretend to have proven our case at

7    this point.  We would like to take discovery.  We

8    would like to go to trial.  That's how we would prove

9    our case.

10             We have alleged sufficient facts based upon

11   the treatment and experience that Mr. Miner and

12   Mr. Baldwin had with the sort of initially unknown

13   police officers when they were arrested, we think,

14   with excessive force.  That it became known that they

15   were police officers, but Mr. Miner, Mr. Baldwin, and

16   Mr. Miner's vehicle were chased through the city by an

17   unmarked van; no sirens, no indication they were

18   policemen.  And they went to a well-illuminated area,

19   Anascostia --

20             THE COURT:  I've read the papers and the

21   proposed amended complaint.  I'm well familiar with

22   your factual allegations.

23             Mr. Gebhardt, now that you've mentioned the

24   police officers, you appear to know the names of at

25   least three of the four John Doe unknown police

1    officers that you have in your proposed amended

2    complaint.  Why didn't you name them as opposed to

3    continuing to call them "four unknown officers"?

4                MR. GEBHARDT:  We're not totally sure that

5    those are the officers, and so we have -- we have this

6    following information:  That three officers were

7    called under the carpet.  They were disciplined for

8    patrolling the wrong area.  And those names, that's

9    the --

10               THE COURT:  And that's the Robert Elliott,

11   Herbert Leboo, and Robert Herberto Torres?

12               MR. GEBHARDT:  Yes.  Yes.  That's all the --

13   that's the only information we have.

14               Mr. Miner never got their names.  He asked

15   for their names when he was interviewed by the police

16   lieutenant on -- this, I think it was Lieutenant

17   Coligan.  So he never got the names officially.

18               As I say, right at the beginning of

19   discovery we can find out who the four officers are.

20   And it's likely it's those three, three of those that

21   you mentioned and we put in the complaint.  But I

22   don't want these people to be subjected to a lawsuit

23   if it's really not them.  So I want to be extra

24   careful on that.

25               THE COURT:  Okay.  And what progress have

1   you made in identifying the fourth officer involved?

2           MR. GEBHARDT:  None.  Mr. Miner recalls it's

3   a female officer, and these other three are men,

4   apparently.

5           THE COURT:  So if I deny the District's

6   motion to dismiss and grant your motion to file your

7   proposed amended complaint, what's your plan?

8           MR. GEBHARDT:  My plan would be to right

9   away negotiate discovery with interrogatories as to

10  who the four individuals were.  I would have companion

11  requests for admissions to say -- admit that these

12  people, these were three of the four officers, so I

13  try to get the official names of the four officers who

14  did this.

15          We would also try to get the name of the

16  metro police officer who witnessed this incident.  And

17  we would talk to Chief Groomes if we're allowed in

18  discovery.  We would talk to her about the

19  department's policies in general, their customs and

20  why they didn't discipline these particular officers

21  who did this rather egregious violation of civil

22  rights.

23          THE COURT:  But in the end, you would have

24  to have a second amended complaint to name them once

25  you get their names?  Is that part of your plan?

1          MR. GEBHARDT:  I hadn't thought that far

2     ahead, but, yes, that would seem reasonable.

3          We did try to find their names officially

4     with Mr. Miner's efforts through the police

5     lieutenant.  We were not able to do that.

6          THE COURT:  All right.  Thank you.

7          Is there anything else you want to add to

8     your motion?

9          MR. GEBHARDT:  No.  You know the law, Your

10    Honor.  Under *Foman*, complaints are supposed to be

11    amended -- you know, amendments of complaints are

12    allowed to be freely granted, and I think we've shown

13    good reason that we've specified these violations are

14    a lot more than they were initially in the case.

15         THE COURT:  All right.  I'll hear from the

16    District, Miss Jones.  And you're here on behalf of

17    the District and all the -- and Chief Lanier.  And

18    what about the -- well, I guess we don't know who

19    these officers are.

20         MS. JONES:  No.  Just Chief --

21         THE COURT:  Okay.  All right.  So I'll hear

22    you on your motion to dismiss.

23         MS. JONES:  Thank you, Your Honor.  First, I

24    also wanted to point out that I believe that the

25    plaintiffs conceded that the Fifth Amendment is

1    applicable here, and I believe that they -- in the

2    revised amended complaint that was filed at ECF 12-1,

3    they've removed that clip.

4            Now, with respect to the District's -- the

5    plaintiffs' *Monell* violation --

6            THE COURT:  Excuse me just a second.  I just

7    want to be clear because we've had the proposed

8    amended complaint that was filed at one part of the

9    docket, and it was revised and another one was filed.

10   So I thought it was the docket at 9-1?

11           MS. JONES:  My understanding from the

12   record, Your Honor --

13           THE COURT:  It is 12-1.  Okay.  Okay.  Thank

14   you.

15           MR. JONES:  Thank you, Your Honor.

16           Now, with respect to the plaintiffs' *Monell*

17   claim, the crux of the plaintiffs' complaint is that

18   following the complaint, the District did not

19   discipline the officers.

20           Now, in order to find municipal liability

21   under *Monell*, the plaintiff must allege facts which

22   support a claim that the municipality was the moving

23   force behind the alleged constitutional violation.

24           Now, in plaintiffs' complaint at -- or I

25   should say revised amended complaint at Paragraph 65,

1    the plaintiff alleges that the defendants were

2    reasonable, well-trained officers.  I believe that

3    this factual allegation defeats the plaintiffs' claim.

4    Because the case that the plaintiff cited to in his

5    opposition to the motion to dismiss is *Atchinson.*

6    *Atchinson* suggests that there may -- when there's

7    inadequate training and a violation, there may be

8    municipal liability, and that's a sufficient --

9         THE COURT:  Well, let me just start by

10   saying, I know that the District's papers in the

11   motion to dismiss are really focused at whether or not

12   there's sufficient factual allegations about a policy

13   or practice of the District under *Monell*, but you're

14   really not disputing the first part of what's required

15   to set out a claim, which is the constitutional

16   violation that occurred?  You're not challenging that;

17   am I correct?

18        MS. JONES:  Taking the factual allegations

19   of the complaint as true, no.

20        THE COURT:  And you're also not challenging

21   any of the claims against the four unknown officers

22   under 12(b)(6); is that right?

23        MS. JONES:  That is correct, Your Honor.

24        THE COURT:  All right.  Okay.  And so,

25   really, you're just focused on whether or not the

1   allegations in the complaint, proposed amended

2   complaint, are sufficient to show any kind of policy

3   or practice on the part of the District?

4           MS. JONES:  That's correct, Your Honor.

5           THE COURT:  And so while you're focused on

6   the one paragraph that says that they were

7   well-trained officers, why isn't that supportive of

8   the plaintiffs' claim that they were well trained to

9   do the wrong thing, and, in fact, that bolsters their

10  *Monell* claim?

11          MS. JONES:  Because, Your Honor, the

12  plaintiffs -- the crux of the plaintiffs' complaint is

13  that the remedial actions of the District were

14  improper, that they weren't disciplined.

15          THE COURT:  That's -- I mean, I think

16  Mr. Gebhardt can speak for himself, but I think his --

17  the factual allegations of the complaint about the

18  District's reaction to Mr. -- the plaintiffs'

19  complaints about how they were treated are used to

20  show that, in fact, the District tolerated those

21  actions as bolstering their policy and practice

22  claims.

23          I don't think that they're complaining

24  about, you know -- you know, it's not -- I don't read

25  their complaint as focusing on the fact that their

1    view, as alleged in the complaint, said their

2    complaints were blown off when they made their

3    complaints.  I think it was this shows and supports

4    their practice and policy claim.

5              Mr. Gebhardt, am I stating that correct?

6              MR. GEBHARDT:  Yes, Your Honor, very much.

7              THE COURT:  All right.  So I don't think

8    they're challenging, per se, how the District reacted

9    to their complaints about their treatment.

10             MS. JONES:  Your Honor, the problem with the

11   plaintiffs' complaint is that it focused on this one

12   particular incident and what happened after that

13   particular incident.  And because *Monell* requires that

14   the District -- the plaintiff must allege sufficient

15   facts to demonstrate the District was the moving force

16   behind the allegation, there are no facts in the

17   complaint that actually suggest that anything done by

18   the District previous, any policy or practice or

19   custom of the District before the incident in

20   question, led to this particular violation, alleged

21   violation.

22             THE COURT:  So you're saying that just

23   because they were only -- they're only able to allege

24   in their complaint one incident, that that is

25   insufficient under *Monell*?  I know that there is some

1    case law support for that.  Is that what you're

2    arguing?

3              MR. JONES:  Yes, Your Honor.

4              I'm sorry.  I'm doing my best not to speak

5    over you.

6              Yes, Your Honor.  I believe the problem with

7    the complaint and why it must fail is because the

8    plaintiff alleges that this one incident happened, and

9    then the actions of the District subsequently were

10   improper.  The plaintiff does not allege any facts

11   that anything the District did previously caused any

12   custom or policy of the District previously caused the

13   violation -- the alleged violation on February -- I

14   believe it was -- the 6th, 2012.

15             THE COURT:  Yes.  But what about their

16   allegation that the incident, itself, occurred because

17   of the District's negligent training of the officers

18   beforehand?

19             MS. JONES:  That's an excellent, question,

20   Your Honor.  And I believe that if you review the

21   revised amended complaint at 12-1, the plaintiff

22   doesn't actually allege any inadequate training.  The

23   plaintiff alleges inadequate supervision and

24   discipline, and that's what distinguishes the

25   plaintiffs' case from *Atchinson* as well as *City of*

1    *Canton, Ohio, versus Harris*.

2              THE COURT:  All right.

3              Mr. Gebhardt, do you have any reply?

4              MS. JONES:  Thank you, Your Honor.

5              THE COURT:  Thank you, Miss Jones.

6              MR. GEBHARDT:  Your Honor, as I indicated

7    before, the only way the facts in the case could

8    really be established beyond what Mr. Miner, Mr.

9    Baldwin have told counsel here and what the record

10   shows the correspondence with Chief Groomes is through

11   discovery.

12             We would intend to find out in their

13   training and, you know, the behavior of these officers

14   and whether it was typical of them.  We don't want to

15   make allegations against the police that are

16   unsupported, but, again, we would probe this -- this

17   inquiry that you and counsel for the defense just had,

18   very carefully in discovery.

19             We're an experienced law firm.  We took this

20   case knowing that it would be a difficult case, and we

21   are prepared to engage in this case and see what we

22   can establish through the facts.

23             All we have is the word of the plaintiffs

24   and some contemporaneous documentation.

25             THE COURT:  All right.  Thank you.

1          MR. GEBHARDT:  Sure.

2          THE COURT:  I'm prepared to rule on both of

3   the pending motions.

4          To the extent that the plaintiffs have

5   asserted a suit against police Chief Lanier in her

6   official capacity, the defendants are absolutely

7   correct that such a claim is properly viewed as one

8   against the municipality.  See *Kentucky v. Graham*,

9   Supreme Court case from 1985 which states, "As long as

10   the government entity receives notice and an

11   opportunity to respond, an official capacity suit is

12   in all respects under the name to be treated as a suit

13   against the entity."

14          Here, the defendants have named the District

15   along with Chief Lanier in her official capacity and,

16   therefore, the addition of Chief Lanier in her

17   official capacity is redundant.

18          As to the point the plaintiffs have also

19   made in oral argument that Chief Lanier is also being

20   sued in her personal capacity, upon review of the

21   proposed amended complaint, I see absolutely no

22   factual allegations that Chief Lanier was personally

23   aware of the actions taken by the four unknown

24   officers, or that she was even those officers'

25   personal direct supervisors.

1          As such, the plaintiffs' motion to amend to

2     include Police Chief Lanier in her personal,

3     professional capacity is denied, and the defendants'

4     most to dismiss as to Chief Lanier in her personal and

5     official capacity is granted.

6          Now, as to the other claims, the Court finds

7     that the plaintiffs have, for the purposes of a

8     12(b)(6) motion, adequately pled a policy and practice

9     claim against the District, and the appropriate

10    Section 1983 claims against the individual officers.

11         As for the policy and practice claims, the

12    Court is mindful that the plaintiffs have an uphill

13    battle because a municipality may only be held liable

14    under Section 1983 if the alleged wrongdoing resulted

15    from an unconstitutional policy, practice, or custom

16    promulgated or sanctioned by the municipality.

17         See *Atchinson v. Colorado*, DC Circuit case

18    from 1986.  Liability certainly cannot be based on the

19    theory of respondeat superior or vicarious acts.

20         See *Monell*, Supreme Court case from 1978,

21    which concluded that a municipality cannot be held

22    liable solely because it employs a tortfeasor.  Accord

23    *Ashcroft v. Iqbal*, Supreme Court from 2009.

24         So to determine municipal liability under

25    Section 1983, the District Court must conduct a

1    two-step inquiry.  See *Baker v. Columbia*, DC Circuit

2    case from 2003.

3             First, the Court must determine whether the

4    plaintiff establishes a predicate constitutional or

5    statutory violation.  See Baker.  See also *Hoai,*

6    *H-O-A-I v. Vo*, 935 F.2d 308, Jump Cite 312, DC Circuit

7    case from 1991.

8             And with respect to the first prong of

9    whether the plaintiff has established a predicate

10   constitutional or statutory violation, the Court must

11   determine whether the complaint alleges -- after the

12   first prong, the Court must determine whether the

13   complaint alleges a custom or policy of the

14   municipality caused that alleged violation.

15            As confirmed in oral argument, the District

16   doesn't dispute here that the plaintiff has

17   sufficiently alleged a predicate constitutional

18   violation, so the first prong is met.  The District is

19   only challenging the sufficiency of the allegations

20   that a custom or policy of DC caused those

21   constitutional violations.

22            The circuit has held that there are a number

23   of ways in which a plaintiff can establish that a

24   policy of the municipality caused the constitutional

25   violations and thereby caused the municipality to be

1    liable under Section 1983.  See *Baker*.

2           Among those ways are the explicit setting of

3    a policy by the government that violates the

4    Constitution or the failure of the government to

5    respond to a need -- for example, the training of

6    employees -- in such a manner as to show deliberate

7    indifference to the risk that not addressing the need

8    will result in constitutional violations.  See *Baker*.

9           Here, the plaintiffs have alleged the

10   presence of a policy of stopping African-American

11   males driving at night in Southeast Washington,

12   removing them from their vehicles and searching them;

13   in other words, stopping people for driving while

14   black.  They assert that this policy directly led to

15   their stop and to their injuries.

16          This claims survive against DC on a 12(b)(6)

17   motion where I must take all factual allegations as

18   true based on the following factual allegations in the

19   complaint, the proposed amended complaint:

20          The plaintiffs allege that the chase lasted

21   not for a brief time but for up to ten to fifteen

22   minutes, that there were four officers involved in the

23   stop, all of whom proceeded to engage in the alleged

24   unconstitutional treatment of the plaintiffs.  So this

25   wasn't one sole officer, rogue officer, off on his own

1   but a group of four.

2          The plaintiffs allege that the stop lasted

3   for approximately thirty minutes even though the

4   plaintiffs have also alleged that they were engaged in

5   no criminal activity, and they were not cited for any

6   violations.

7          The plaintiffs allege the officers then did

8   not respond to the plaintiffs' questions as to why

9   they were stopped and why the officers did not

10  activate their lights and sirens identifying

11  themselves as police officers during the chase.

12         The plaintiffs then further allege that the

13  Metropolitan Police Department acknowledged the

14  plaintiffs' complaint which was filed the day after

15  the stop, and, in fact, interviewed one of the

16  plaintiffs but found there were insufficient facts to

17  substantiate the plaintiffs' complaints.

18         This allegation in the complaint suggests

19  that the department was aware of the practices engaged

20  in by the officers in question and did not find that

21  behavior unusual.

22         The plaintiffs allege the department

23  disciplined the officers involved for patrolling

24  outside their assigned area but did not do so for the

25  events pertaining to the stop which indicates a

1    plausible claim that the defendant municipality is

2    either failing to supervise its officers adequately or

3    this is a policy or practice in which the department

4    regularly engages in and is tolerated.

5         The plaintiffs further allege that there's

6    no remedial action that was taken, which, if proven

7    true, could provide the basis for a negligent

8    supervision claim.  These facts alleged are sufficient

9    to survive a motion to dismiss where, in support, I

10   cite the following cases:  *Daskalea v. District of*

11   *Columbia*, 227 F.3d 433, Jump Cite 441, which is a DC

12   Circuit case from 2000, which states -- and I quote --

13   "A city's inaction, including its failure to train or

14   supervise its employee adequately, constitutes a

15   policy or custom under *Monell,* and it can be said that

16   the failure amounts to deliberate indifference towards

17   the constitutional rights of persons in its domain."

18        See also *Muhammad v. District of Columbia*,

19   584 F.Supp.2d 134, Jump Cite 138, DC Circuit case from

20   2008 which found an allegation that the municipal

21   defendant knew of the alleged misconduct by the

22   officer and failed to retrain the officer sufficient

23   to support a 1983 claim in the 12(b)(6) stage where

24   we're at in this case.

25        See also *Linares v. Jones*, 2007 Westlaw

1    1601725, at *7, a DDC case from June 4, 2007, that

2    found a statement in the pleading that the defendant

3    failed to adequately oversee the training and

4    supervision of the arresting officers and implemented

5    policies and procedures that created unreasonable

6    risks to the public of police misconduct sufficient to

7    survive a 12(b)(6) motion.

8           And finally, see *Amons v. District of*

9    *Columbia*, 231 F.Supp.2d, 109, Jump Cite 115, a DDC

10   case from 2002 denying a dismissal of a policy and

11   practice claim against DC explaining -- and I quote --

12   "When gleamed through the lens of the liberal

13   viewpoint the complaints must be evaluated when

14   challenged on 12(b)(6) grounds, the complaint here can

15   be fairly said to allege that plaintiff was subjected

16   to a false arrest as a result of the District's policy

17   of condoning and ratifying the unlawful conduct of its

18   police officers."

19          The Court is satisfied that these

20   allegations in the proposed amended complaint are

21   sufficient to warrant proceeding to discovery because

22   there is a plausible statement of a claim that, if

23   proven true, would be sufficient upon which to grant

24   relief.  See Ashcroft v. *Iqbal* and *Twombly*.

25          Therefore, as to the claims against the

1    District, the plaintiffs' motion to amend is granted,

2    and the defendants' motion to dismiss is denied.

3         As to the remaining claims against the

4    individual officers, the plaintiffs clearly allege a

5    Fourth Amendment violation because they were detained

6    for thirty minutes without any citation being issued

7    and allegedly without probable cause, with an

8    unreasonable suspicion, and allegedly pulled from

9    their vehicles, handcuffed and threatened with drawn

10   firearms.

11        See *Rudder v. Williams*, DC Circuit case from

12   2012, holding that excessive force violates the Fourth

13   Amendment if the nature and quality of the intrusion

14   on the individual's Fourth Amendment interests

15   outweighs the countervailing governmental interests at

16   stake.

17        At the motion to dismiss stage, the

18   plaintiffs have adequately pled a Fourth Amendment

19   violation against the individual officers such that

20   the case should proceed to discovery under *Twombly* and

21   *Iqbal*.  Consequently, the plaintiffs' motion to amend

22   as to the four unnamed officers is granted and the

23   defendants' motion to dismiss, to the extent it even

24   addressed the four unnamed officers, is denied.

25        So, to be clear, we're proceeding with the

1   revised amended complaint docketed at ECF 12-1 naming

2   the District and the four Doe officers on all claims.

3           All right.  Now I would like to discuss

4   scheduling in the case now that we have an amended

5   complaint and now that the motion to dismiss has been

6   resolved.

7           How much time would the parties need to

8   submit a proposed scheduling order.

9           MR. GEBHARDT:  Your Honor, it shouldn't take

10  too long.  Maybe two weeks.

11          MS. JONES:  Your Honor, typically, I would

12  agree with that, but I actually have a training most

13  of next week.  So if we could have three weeks, I'd

14  appreciate it.

15          THE COURT:  All right.  I will enter a

16  minute order today that also requires the parties to

17  submit the meet and confer statement in three weeks.

18          All right.  Is there anything further today?

19          MS. JONES:  Nothing further on behalf of

20  defense.

21          THE COURT:  All right.  Mr. Gebhardt.

22          MR. GEBHARDT:  No.  Thank you, Your Honor.

23          THE COURT:  Okay.  Thank you.

24          MS. JONES:  Thank you, Your Honor.

25          (The proceedings concluded at 11:53 a.m.)

REPORTER'S CERTIFICATE

I, Chantal M. Geneus, a Certified Realtime Reporter and Registered Professional Reporter of the United States District Court for the District of Columbia, do hereby certify that I stenographically reported the proceedings in the matter of CA 13-633, *Miner versus Gray, et al.*, on Friday, November 1, 2013, in the United States District Court for the District of Columbia, before the Honorable Beryl A. Howell, United States District Judge.

I further certify that the Page Numbers 1 through 25 constitute the official transcript of the proceedings as transcribed by me from my stenographic notes to the within typewritten matter.

In witness whereof, I have affixed my signature on December 3, 2013.

                              /s/ Chantal M. Geneus
                              Chantal M. Geneus, RPR, CRR
                              Official Court Reporter